CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 4 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |
|---|---|
| JOHN FRANK RYMARZ, | ) |
| Petitioner, | ) |
| v. | ) |
| GENE M. JOHNSON, | ) |
| Respondent. | ) |

Case No. 7:09CV00276

**MEMORANDUM OPINION**

By: Glen E. Conrad
United States District Judge

Petitioner John Frank Rymarz, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Rymarz challenges the validity of his confinement pursuant to the 2007 judgment of the Circuit Court for Stafford County, Virginia under which he stands convicted of credit card theft, credit card forgery, credit card fraud, and fraudulent use of identifying information. Respondent filed a motion to dismiss, to which Rymarz replied, making the matter ripe for decision.[1] Upon review of the record, the court finds that the motion to dismiss must be granted.

## I. Background

### Indictment and Arraignment

A grand jury in the Circuit Court for Stafford County returned fifteen indictments on July 6, 2006, charging John Frank Rymarz with twelve counts of credit card forgery, one count of credit card theft, one count of credit card fraud, and one count of fraudulent use of identifying information causing financial loss greater that $200. (Case Nos. CR06000732-00 through CR06000732-14 (hereinafter Case No. 732)) Rymarz turned himself in to authorities in early July 2006, and the court appointed Terry Patton, Esq. of the Public Defender's (PD's) Office to represent Rymarz on this set of charges. At the arraignment on August 15, 2006, Rymarz

---

[1] Rymarz is incarcerated at Buckingham Correctional Center, within the territorial jurisdiction of this court.

pleaded not guilty and waived his right to a jury trial. Patton asked that the case be set for a possible plea or trial in three weeks, and Rymarz was released on bond. At a brief hearing on September 25, 2006, Rymarz again indicated his desire to plead not guilty. The Court granted a defense motion for continuance and scheduled the case for a jury trial on February 21, 2007 at 10:00 a.m.

On November 6, 2006, the grand jury returned six additional indictments, charging Rymarz with credit card theft, credit card forgery, theft of a firearm, statutory burglary, fraudulent use of identification, and a misdemeanor charge of credit card fraud. (Case Nos. CR060001061-00 through CR060001061-05 (hereinafter Case 1061)). The Court appointed Patton to represent Rymarz on these charges as well.[2] Rymarz pleaded not guilty to all six charges, and trial was set for February 21, 2007.

Court convened on February 21, 2007 at 9:00 a.m. to address a pending motion to continue. John Mayoras, Esq., of the PD's Office, appeared for the defense to argue that the two trials be continued to the same future trial date, but Rymarz did not appear. Mayoras stated his understanding that Rymarz was incarcerated. The judge issued a capias and recessed the case for a short time. When Court reconvened, Rymarz was present with Patton. The judge withdrew the capias, after Rymarz explained that he had not been notified of the 9:00 a.m. motions hearing and expected trial proceedings to begin at 10:00 a.m. as scheduled. The Court also agreed to the parties' request that the two cases be continued and tried on the same day, May 2, 2007.

### Alford Pleas in Case No. 732

On the morning of the trial date, May 2, 2007, Patton informed the Court that Rymarz had decided to enter Alford pleas to the first set of charges in Case No. 732. The Court then questioned Rymarz, who affirmed that he understood the fifteen charges in this case, but informed the Court that he had only learned the day before the identity of the victim. The Court

---

[2] At various times during the proceedings, other attorneys from the PD's Office assisted Patton in representing Rymarz.

asked if he wanted the indictments read to him, and Rymarz stated, "No, sir. I have read them." (Tr. 6, May 2, 2007.) The Court asked if Rymarz understood that he was entering <u>Alford</u> pleas to the charges and explained this term. Rymarz indicated that he understood. The Court then stated: "Before accepting your <u>Alford</u> plea of guilty, the Court will ask you some questions. If you do not understand any question, please ask me to explain it to you." (<u>Id.</u> 7.) Rymarz indicated that he had completed the eleventh grade, that he had discussed the charges with his lawyer, and that he understood what the Commonwealth would have to prove in order for him to be found guilty. The Court then reminded Rymarz that the jury was present, ready to try the case: "[s]o if you don't feel that you can answer [the court's questions] in a way which will enable the Court to accept your plea, then just say so." (<u>Id.</u> 8.) Rymarz then indicated that after discussion with his attorney about how he should plead, he had decided for himself that he should enter "the <u>Alford</u> plea–pleas of guilty" and that he was doing so freely and voluntarily. (<u>Id.</u> 8-9.) He indicated that he understood that by pleading guilty he was waiving specific constitutional rights, including the right to appeal the decision of the court. He denied that anyone connected with his arrest and prosecution had threatened or forced him to plead guilty or made any promises concerning the pleas. He stated that he was satisfied with the services of the Public Defender's Office and that he had understood all of the Court's questions. The Court asked, "At this time do you have any questions you wish to ask the Court?" (<u>Id.</u> 11.) Rymarz answered, "No, sir." (<u>Id.</u>)

The prosecutor then provided the following summary of the Commonwealth's evidence for Case No. 732. (<u>Id.</u> 12-18.) The victim, Gregory Hamlin, Sr., had a credit card account with Bank of America. In addition to the regular-sized card, Hamlin also had a small card, encased in plastic molding, which he kept on the dresser in his bedroom. Rymarz was a friend of Hamlin's son and was visiting in the Hamlin home on May 5, 2006. Nine days later, on Mother's Day, Hamlin tried to use his credit card, and the charge did not go through. When he reviewed his credit card statement, he discovered charges posted on May 6, 8, 9, 10, and 12, 2006, at various

vendors, that Hamlin had not made. His son denied making any of the charges. Hamlin still had his credit card, but discovered that the small replica credit card, sitting on the dresser where he usually kept it, had been punched out of its plastic molding. Hamlin's son remembered that Rymarz visited the home a second time a week or so later. The son saw Rymarz coming out of his father's bedroom and near the dresser. When asked what he was doing in that room, Rymarz said that he had lost something.

Detective Lloyd of the Stafford County Sheriff's Office investigated the case. He spoke with Rymarz on the telephone and asked him about the credit card charges. Rymarz admitted that he had used the card at various places between May 6 and May 12, 2006 without Hamlin's permission. Rymarz voluntarily agreed for the detective to interview him in person at the sheriff's department on June 6, 2006. Lloyd showed Rymarz the Hamlin credit card statement, and Rymarz admitted that he had made the charges in question. He stated that he first used the card to make a $1.21 charge at WalMart to see if it would work. After that charge went through, he made additional charges for cigarettes, gas, and other items. The unauthorized charges totaled $760.09, for which Hamlin's bank reimbursed him.

Hamlin and his son would have testified that on May 18, 2006, as they were driving to band practice, Rymarz drove up behind them, driving erratically, beeping the horn at them. Hamlin told Rymarz that he had better answer police phone calls about things missing from the Hamlin home. Rymarz continued following the Hamlins' car, cursing at them and beeping his horn. At a stoplight, he pulled up beside the car and handed them a note: "I just got a 25 thousand dollars trust fund. How much do I owe you cash." (Id. 17.)

The prosecutor stated that based on this evidence, Rymarz was charged with credit card fraud because the total of the unauthorized charges exceeded $200 in a six-month period, that he was charged with twelve separate incidents of credit card forgery for the separate unauthorized purchases with the card, and that the identity fraud charge arose because the financial loss to the bank was over $200. The Court then stated:

- 4 -

The Court is satisfied that the defendant understands the nature of the charges against him and the consequences of his Alford plea and the pleas are made voluntarily. The Court finds from the evidence that the evidence is enough to find him guilty beyond a reasonable doubt. And on his pleas, Alford pleas and the evidence, the Court makes that finding on all the charges.

(Id. 18-19.) Based on these convictions, the Court revoked Rymarz's bond. Id. at 19.

## Counsel's Motion to Withdraw

After Rymarz entered his guilty pleas in Case No. 732, the attorneys began discussing the pending motion to continue the jury trial scheduled for the same day on Rymarz's other charges, Case No. 1061. Rymarz's counsel then informed the Court, "I really think I need to withdraw on that other case because he is very unhappy with my representation on this case, and I can imagine it's only going to get worse." (Id. at 20.) The prosecutor stated that Commonwealth witnesses had been released, based on defense counsel's representation that the defense was not ready for trial. (Id.) Then followed this exchange:

| | |
|---|---|
| RYMARZ: | There's no way I can get a different lawyer in here today that I can have the jury trial on this case for this? I just don't feel comfortable. I don't understand anything he is trying to tell me. I couldn't hear[ ] him. I have talked to him once. This case has been going on for over a year. |
| COUNSEL: | I gave him my personal - - - |
| COURT: | Be quiet, Mr. Rymarz. |
| COUNSEL: | cell phone, which I give to very few clients. He called me at least three times yesterday. We had a meeting with him last Thursday. There is not a lot I can do. I have explained these things five and six times and he is not listening to me. |

(Id. at 22-23.) The Court then granted the Commonwealth's motion to continue Case No. 1061, directed defense counsel to file a motion to withdraw if warranted, and scheduled the trial for May 29, 2007. (Id. at 23-25.) A brief exchange between Rymarz and the Court followed:

| | |
|---|---|
| RYMARZ: | Why is my bond being revoked? Nothing has changed. |
| COURT: | Because you have been convicted of fifteen felonies. |
| RYMARZ: | I want to plead not guilty to that and – |
| COURT: | Court has already found you guilty of fifteen felonies and you are remanded to jail until your sentencing on those charges, in addition to any other charges you will be tried on. You are remanded to the custody of the sheriff. |

(Id. at 26-27.)

The Court conducted a hearing on defense counsel's motion to withdraw. (Tr. 5, May 10, 2007.) Rymarz told the Court:

> I'm fine with him keeping this case [Case No. 1061]. It was just a previous case and it'[s] his choice to not want to go further in this case. I never mentioned not, you know, not having him as counsel for this. That would be fine with me. It's just my other case, I feel as though I didn't have, you know, enough time to even talk. I wasn't prepared for the case and – but with this, I'm fine with him being my counsel.

(Id. 9.) Counsel told the Court that he was "fine" with keeping the case and that the defense was ready for trial. (Id..) The Court then denied counsel's motion to withdraw and advised Rymarz that he "had best cooperate with [his] lawyer"; Rymarz answered, "Yes, sir." (Id.) The Court then advised, "And you'll be in court and a Judge will ask you do you understand what's going on if you agree to a guilty plea or not, and, if you don't, say so." (Id. at 10.)

### Guilty Pleas in Case No. 1061

The Court convened on May 29, 2007, to take Rymarz's guilty pleas to Case Nos. CR060001061-00 (credit card theft), CR060001061-01 (credit card forgery), and CR060001061-05 (misdemeanor fraudulent use of identification).[3] After conferring with counsel, Rymarz stated his intention to plead guilty to these three charges. (Tr. 4, May 29, 2007.) The Court then reminded Rymarz to ask the Court for explanation of anything he did not understand, and Rymarz answered, "Yes, sir." (Id. at 5.) Rymarz verified his age and education level and indicated that he understood the charges against him, had discussed the charges with counsel, and understood what the Commonwealth had to prove to support a finding of guilt; that he had talked with counsel about possible defenses and about whether or not he should plead guilty; and that he had made the final decision for himself to plead guilty, of his own free will, because he was, in fact, guilty of the offenses charged. (Id. 5-7.)

The prosecutor then summarized the Commonwealth's evidence. (Id. at 8- 9.) Rymarz had previously had an ongoing relationship with Jennifer Woods and lived for awhile with her,

---

[3] After entry of the guilty pleas to these three charges, pursuant to the plea agreement, the Commonwealth moved to nolle pros the three other charges in Case No. 1061. (Tr. 2-3, May 29, 2007.)

her mother, and her step-father, James Robinson. Shortly after the relationship between Rymarz and Woods ended, a neighbor saw Rymarz around the Robinson home when none of the family was there. About the same time, the homeowner, Robinson's wife, discovered that a credit card was missing and had been used without permission. When investigators questioned Rymarz, he admitted to using the credit card. He offered various explanations about how he came to possess and use the card. He tried to implicate Ms. Woods for the unauthorized uses of the card. The Commonwealth's evidence discredited this defense, however, and indicated that Rymarz was solely responsible for using the card without permission to get a tattoo.[4]

Rymarz indicated that he understood the evidence against him and pleaded guilty to each of the three charges. (Id. 10-11.) The Court then ascertained that Rymarz understood the rights he was waiving by pleading guilty; that no one connected to his arrest or prosecution had forced him, or threatened him to get him to plead guilty; that no one had made any promises concerning his pleas of guilty; that he understood and had discussed with counsel the maximum punishment for each charge; and that he might be sentenced to consecutive sentences. (Id. 11-13.) Rymarz indicated that he was satisfied with the services of his attorney in the case and that he understood that entry of the guilty pleas might waive his right to appeal. (Id. 13-14.) Rymarz indicated that he had understood all the Court's questions and that he had no questions to ask the Court. (Id. 14.) The Court then found that Rymarz was making the guilty pleas voluntarily with an understanding of the substantial evidence against him and found him guilty of the charges. (Id.) The Court scheduled both sets of charges for sentencing.

### Motion to Withdraw Pleas

When the Court convened on July 6, 2007 for sentencing, however, counsel moved for another continuance, based on Rymarz's intention to file a motion to withdraw his guilty pleas. On July 12, 2007, the Court conducted a hearing on Rymarz's motion to withdraw all of his

---

[4] The charges to which Rymarz pleaded guilty related to his purchase of a tattoo with Robinson's credit card. (Tr. 9, May 29, 2007.)

guilty pleas. Under oath, Rymarz explained his reasons for wishing to withdraw his guilty pleas. He wanted to withdraw the <u>Alford</u> pleas in Case No. 732, entered on May 2, 2007, because he had been unable to contact a key witness while incarcerated, but believed the judge would not grant him a continuance for that reason. (Tr. 7-8, July 12, 2007.) He also claimed that counsel had told him that he could withdraw his guilty plea at any time. (<u>Id.</u>) On cross-examination, Rymarz admitted that he had been out of jail for several months before the guilty pleas, that he had never informed the judge about being unable to contact his witness, and that no one had forced him or tricked him into pleading guilty on May 2, 2007. (<u>Id.</u> 14-15.) Rymarz wanted to withdraw his guilty pleas in Case No. 1061, entered on May 29, 2007, because he had since been told that the three charges dismissed pursuant to the guilty pleas might be brought back against him at some later time, and he decided he wanted to have a jury decide everything. (<u>Id.</u> 9-10.) Finding no evidence demonstrating that Rymarz was "operating under a mistake of fact or that he was induced" to enter his guilty pleas, the Court denied the motion to withdraw the guilty pleas. (<u>Id.</u> 34-35.)

### Sentencing

The Court conducted a sentencing hearing on July 26, 2007, as to all charges. After considering argument from the parties, as well as a statement from the defendant, and after reviewing a presentence report, including defendant's prior criminal record, the Court sentenced Rymarz to three years on each of the seventeen charges for a total of 51 years, with the sentences to run consecutively, but with all but five years suspended, conditioned on good behavior for twenty-five years and payment of restitution. (<u>Id.</u> 13-14.) The Court stated:

> I look back to 2000, and I see time after time after time, just as the Commonwealth's Attorney has stated, which you have shown complete disregard for the laws of the Commonwealth. You violated probation and Judges have probably helped you a little bit along this by giving you sentences that didn't mean anything. I'm not doing it. The guidelines are less. I believe the sentence that I have just imposed today is appropriate. Good luck.

(<u>Id.</u> 14.)

## Post-Conviction Proceedings

Attorney Patton noted an appeal on Rymarz's behalf to the Court of Appeals of Virginia. Counsel filed a petition for appeal pursuant to Anders v. California, 386 U.S. 738 (1967), arguing that the trial court abused its discretion by denying the motion to withdraw the guilty pleas and abused its discretion in sentencing Rymarz to five years of active jail time. Patton also moved to withdraw as counsel. Rymarz submitted a supplemental pro se brief, arguing that the trial court had relied on inaccurate information in determining his sentence and had made false statements during the sentencing proceeding.

The Court of Appeals of Virginia received a pro se motion from Rymarz on April 11, 2008, seeking to withdraw his appeal so that he could file a motion for reconsideration in the trial court. The Court notified Patton that he was still counsel of record, that he should consult with Rymarz about his desire to withdraw the appeal, and that Rymarz would need to complete an affidavit, confirming his intent to withdraw the appeal. On April 25, 2008, the Court received a motion to withdraw Rymarz's appeal, filed by John D. Mayoras of the PD's Office; as required, the motion was accompanied by Rymarz's notarized affidavit, dated April 16, 2008, stating that he was knowingly and voluntarily moving to withdraw his pending appeal. By order dated April 29, 2008, the Court of Appeals granted Rymarz's motion to withdraw the appeal. Another PD later filed a motion in the Circuit Court for Stafford County, seeking reconsideration of the sentence based on misinformation presented at sentencing regarding Rymarz's prior record. The Court denied this motion.

Rymarz filed a timely petition for a writ of habeas corpus in the Supreme Court of Virginia. (Record No. 090196.) On July 1, 2008, the Court issued an order indicating that after consideration of the petition and the respondent's motion to dismiss, the petition was denied and dismissed. Rymarz subsequently filed this timely petition pursuant to § 2254, raising Claims A through U.

## II. Opinion of the Court

### Exhaustion

"A federal court may not grant a writ of habeas corpus to petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). Respondent concedes that Rymarz has exhausted his state court remedies as to all of the claims raised in his § 2254 petition by presenting them to the Supreme Court of Virginia in his petition for a writ of habeas corpus before that court.

### Deference to State Court Adjudications

To the extent that the Virginia courts adjudicated Rymarz's claims on the merits, this court is bound to follow the deferential standard set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This section reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). A state court adjudication is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"Where, as here, it is the state court's application of governing federal law that is challenged, the decision must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotations and citations omitted).

The Virginia courts' findings cannot be deemed unreasonable merely because they do not cite established United States Supreme Court precedent on an issue, even if they are unaware of such precedent, "so long as neither the reasoning nor the result of the state-court decision contradicts" such Supreme Court precedent. See Mitchell v. Esparza, 540 U.S. 12, 16 (2003). The habeas petitioner has the burden to prove that the state court applied federal law in an "objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). A federal habeas court must presume that the state courts' determination of a factual issue is correct, absent clear and convincing evidence rebutting the presumption. 28 U.S.C. § 2254(e)(1).

### Preclusive Effect of Valid Guilty Plea

A guilty plea is constitutionally valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" and when circumstances surrounding the plea "reflect that the defendant was informed of all the direct consequences of his plea." Beck v. Angelone, 261 F.3d 377, 394 (4th Cir. 2001) (citations omitted). A valid guilty plea precludes federal habeas review of "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 266 (1973). Consequently, claims that counsel provided ineffective assistance preceding a guilty plea are cognizable in habeas review only to the extent that counsel's alleged deficient performance bears on the validity of the plea itself. Id. Moreover, a defendant is bound by his sworn representations during a plea colloquy, absent clear and convincing evidence to the contrary. Fields v. Attorney General of the State of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992) (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)). Therefore, "in the absence of extraordinary circumstances, the truth of sworn statements made during [guilty plea] colloquy is conclusively established," and a federal habeas court may summarily dismiss habeas claims "that necessarily rel[y] on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

## Ineffective Assistance of Counsel

To prove that counsel's representation was so defective as to require that the conviction be vacated, petitioner must satisfy both prongs of a two-part standard by demonstrating that counsel's defective performance resulted in prejudice. Strickland, 466 U.S. at 687. First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To do so, petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted). Second, to show prejudice, the petitioner must demonstrate a "reasonable probability" that, but for counsel's errors, the outcome would have been different. Id. at 694-95. When petitioner alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). If it is clear that petitioner has not satisfied one prong of the Strickland/Hill test, the court need not inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697.

## Petitioner's Claims

**Claim A:**   **Petitioner was denied his right to appeal, based on the advice of attorney Stacey Garcia, who "informed him to withdraw his appeal, then decided not to follow through with the Motion to Reconsider." Ms. Garcia also gave petitioner advice concerning trial counsel's alleged errors without investigating specific details of his case.[5]**

Attorney Stacey Garcia submitted an affidavit in support of the motion to dismiss in state court, denying that she "told" Rymarz to withdraw his appeal. According to her affidavit, family members contacted her law firm, alleging that his counsel had made mistakes and that he had

---

[5] Rymarz has no actionable claim that Garcia's advice prejudiced his ability to bring habeas claims regarding his other attorney's actions. See Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003) (finding that claim of ineffective assistance of counsel in habeas proceedings fails, because there is no constitutional right to effective counsel in state post conviction proceedings).

been unfairly sentenced. When she first met with Rymarz on March 31 or April 1, 2008, he told her that he was not currently represented by counsel and wanted to know whether he should appeal or move for reconsideration. He advised her that he had attempted to appeal while represented by the Public Defender's Office, but had not completed the appeal. She told him that it was too late to appeal, but that her firm would represent him in filing a motion for reconsideration. When Garcia and her staff verified soon thereafter that Rymarz, in fact, had an appeal petition pending and was represented by the PD's Office, she communicated to him, by letter dated April 8, 2008, that the firm could not represent him and that his family's money would be refunded.[6]

In state habeas proceedings, the Supreme Court of Virginia rejected Claim A, finding that Rymarz had not satisfied either the performance prong or the prejudice prong of the Strickland standard. Specifically, the Court found from the record, including the affidavit of Ms. Garcia and attachments, and Rymarz's affidavit and motion to withdraw his appeal, that Rymarz "decided for himself to withdraw the appeal."

The court agrees that Rymarz states no ineffective assistance claim against Garcia. Rymarz consulted Garcia, knowing that he was still represented by other counsel. Whether or not Garcia advised Rymarz to withdraw his appeal, it is clear from the state habeas record that as soon as she verified that Rymarz was still represented by the PD's Office, she terminated her representation and attempted to notify Rymarz of that fact. Even if Rymarz did not receive Garcia's termination letter before filing his initial pro se motion to withdraw the appeal, he cannot blame her for his decision carry through with the withdrawal. Given the Court of Appeals procedure that required the PD as current counsel to prepare a formal motion and affidavit for Rymarz to sign regarding the rights he was waiving pursuant to the withdrawal, Rymarz had ample opportunity to discuss the decision with counsel. If he chose to follow Garcia's advice,

_____

[6] Rymarz claims that he never received this letter.

instead of consulting with or giving credence to the advice of his court-appointed counsel regarding the advisability of withdrawing the appeal, Rymarz "[had] only himself to blame for taking the advice of [one lawyer] over the advice of another." United States v. Stoia, 109 F.3d 392, 398 (7th Cir. 1997) (finding no constitutional claim where two attorneys defendant consulted gave different advice). Moreover, Garcia's termination of her representation did not preclude Rymarz from pursuing a counseled motion in the trial court, seeking reconsideration of his sentence based on inaccurate information presented to the Court during sentencing. Only after that motion failed did Rymarz decide that withdrawing the appeal was a bad idea.

Rymarz fails to demonstrate that Garcia's actions were professionally deficient or that but for her actions, the outcome of any proceeding would have been different. Because the state court's disposition of this claim was not contrary to, or an unreasonable application of, Strickland as established federal law, or based on an unreasonable determination of facts, the motion to dismiss must be granted, pursuant to § 2254(d).

> **Claim B:** **Petitioner's trial counsel failed to preserve issues at trial, thus denying petitioner his right to appeal his guilty plea and improper statements regarding prior convictions. Petitioner had stated in open court that counsel was ineffective, so the Public Defender's Office should not have filed the Anders petition for appeal on petitioner's behalf.**

The Supreme Court of Virginia dismissed this claim because Rymarz did not show prejudice under Strickland. The Court noted that after filing his pro se appellate brief, raising the same issues he claims counsel should have raised, Rymarz voluntarily withdrew his appeal, and the trial court denied his subsequent motion for reconsideration based on those issues. As Rymarz thus has not shown a reasonable probability that the outcome in his case would have been different but for counsel's alleged errors, he has not satisfied the prejudice prong under Strickland. 466 U.S. at 687. Because the state court's disposition of this claim was not contrary to, or an unreasonable application of established federal law, or based on an unreasonable determination of facts, the motion to dismiss must be granted, pursuant to § 2254(d).

- 14 -

**Claim C:** Trial counsel failed to investigate properly and decided that petitioner should plead guilty before first speaking with petitioner. Counsel had only spoken to the prosecutor. Petitioner entered a "not guilty" plea at a hearing held August 15, 2006.

The state habeas court dismissed this claim under Anderson v. Warden, 281 S.E.2d 885, 888 (Va. 1981), because Rymarz offered no "valid reason why he should not be bound by his representation [during the May 2, 2007 plea hearing] that his counsel's performance was adequate." The record supports the state court's finding that the guilty pleas were valid. Rymarz's statements in open court indicated that he was competent to enter the pleas, that he understood the elements of the charges and the consequences of his pleas, that he was satisfied with counsel's representation, and that he was pleading guilty voluntarily based on his belief that it was the best option available to him.

In his current petition, Rymarz does not allege any facts indicating that counsel's alleged errors in connection with the August 15, 2006 hearing had any bearing on the validity of the guilty pleas Rymarz entered on May 2, 2007. By the time Rymarz entered these guilty pleas, counsel had investigated the case for eight months, Rymarz had pleaded not guilty on two occasions, and the case was ready to go to trial. Thus, Rymarz is bound by his plea hearing statements that counsel's performance was acceptable, and this claim contradicting those statements was properly dismissed.[7] Lemaster, 403 F.3d at 221-22.

Moreover, Rymarz fails to demonstrate any reasonable likelihood that but for counsel's alleged errors on August 15, 2006, a reasonable defendant would not have pleaded guilty on May 2, 2007. The extensive evidence against Rymarz included his own videotaped confession to police. Accordingly, he fails to demonstrate prejudice under Hill, 474 U.S. at 58-59. Inasmuch

---

[7] Rymarz argues that he should not be bound by his plea colloquy statements in Case No. 732 because when he told the court he did not want to plead guilty, the court told him to "be quiet." However, the trial court's admonishment to Rymarz to "be quiet" came only after Rymarz had successfully entered the guilty pleas. (Tr. 22-23, May 2, 2007.) Furthermore, the court entertained Rymarz's subsequent motion to withdraw the guilty pleas as to both cases and found no evidence that he was induced to plead guilty. (Tr. 34-35, July 12, 2007.)

as the state court's disposition of Claim C is thus not contrary to, or an unreasonable application of established federal law, or based on an unreasonable determination of facts, the motion to dismiss must be granted, pursuant to § 2254(d).

|  |  |
|---|---|
| **Claim D:** | **The trial judge violated petitioner's due process rights at the hearing held August 15, 2006, because the judge was unfamiliar with courtroom procedures in Stafford County and his errors caused prejudice to petitioner's case.** |

The state habeas court dismissed Claim D as barred under Peyton v. King, 169 S.E.2d 569, 571 (Va. 1969), which holds that a voluntary and intelligent guilty plea waives all non-jurisdictional defects preceding the guilty plea. Such a ruling is not contrary to, or an unreasonable application of, established federal law. Tollett, 411 U.S. at 267. Nor is the ruling based on any unreasonable finding of fact, as Rymarz fails to allege any specific respect in which the judge's unfamiliarity with court procedures affected the outcome of the case. Accordingly, the motion to dismiss must be granted as to Claim D.

|  |  |
|---|---|
| **Claim E:** | **Trial counsel caused prejudice throughout trial by stressing to the court that petitioner had changed his mind concerning his pleas. Petitioner advised the court on August 15, 2006, that he wanted to plead not guilty.** |

The Supreme Court of Virginia dismissed Claim E under Anderson, 281 S.E.2d at 888, because Rymarz failed to show why he should not be bound by his plea hearing statements on May 2, 2007 that counsel's performance was adequate and the guilty pleas were voluntary. As this ineffective assistance claim does not bear on the validity of the guilty pleas and contradicts Rymarz's plea hearing statements, its dismissal on this ground was not contrary to, or an unreasonable application of federal law. Hill, 474 U.S. at 53-59; Lemaster, 403 F.3d at 221-22.

In any event, the record indicates that three different judges presided over the pretrial hearings on August 14 and September 25, 2006 and the guilty plea hearing on May 2, 2007. Thus, Rymarz fails to show any reasonable likelihood that discussions about his possible guilty pleas at the earlier hearings affected the outcome in any respect. The motion to dismiss must be granted as to Claim E.

**Claim F:** Trial counsel was ineffective in pushing for petitioner to plead guilty, which caused waiver of petitioner's speedy trial rights. Petitioner did not want to plead guilty because he had permission to use the credit cards. Counsel indicated to the prosecutor, however, that the cases would probably be resolved in pleas of guilty.

The state court dismissed this habeas claim under Anderson, finding that Rymarz was bound by his plea hearing statements regarding counsel's performance and the validity of his guilty pleas. The assertions in Claim F directly contradict Rymarz's statements at both plea hearings that after adequate discussion with counsel regarding the charges, he decided for himself that he should enter pleas of guilty.[8] (Tr. 8-9, May 2, 2007; Tr. 6-7, 12-14, May 29, 2007.) Because he fails to offer clear and convincing evidence disproving the truth of his sworn statements, his habeas claim was properly dismissed.[9] Hill, 474 U.S. at 53-59; Lemaster, 403 F.3d at 221-22. As the state court's disposition of the claim was not contrary to, or an unreasonable application of established federal law, or based on an unreasonable determination of facts, the motion to dismiss must be granted, pursuant to § 2254(d).

**Claim G:** Trial counsel failed to investigate and keep petitioner informed as to the proceedings by assuming that petitioner was incarcerated, when petitioner was released on bond. Counsel's error caused a capias to be issued. Although counsel had it withdrawn, it was clear counsel was pushing for guilty pleas without making any attempt to defend petitioner.

The state court dismissed this habeas claim under Anderson, finding that Rymarz was bound by his plea hearing statements regarding counsel's performance and the validity of his

---

[8] There is no speedy trial issue here. Rymarz was out on bond initially, which triggered a nine-month time frame under Virginia's speedy trial law, Virginia Code Ann. § 19.2-243, and counsel secured or agreed to continuances that tolled the statutory period. Rymarz was tried within ten months on the original indictments and within six months on the later indictments. Thus, the timing did not trigger any constitutional speedy trial concerns. See Doggett v. United States, 505 U.S. 647, 651-52 (1992) finding that no constitutional concern regarding speedy trial is triggered unless the delay between accusation and trial approaches one year).

[9] Even when Rymarz moved to withdraw his guilty pleas, he failed to present evidence that counsel had pushed him to plead guilty. With regard to the first set of charges, he alleged that he had been told he could withdraw the pleas at any time. (Tr. 7-8, July 12, 2007.) As to the second set of charges, he admitted on cross-examination that he had not been forced to plead guilty. (Id. 13, 15.)

guilty pleas. Because the claim has no bearing on the validity of Rymarz's pleas and directly contradicts his sworn statements at the plea hearing, it was properly dismissed. Hill, 474 U.S. at 53-59; Lemaster, 403 F.3d at 221-22.

Furthermore, the claim fails on the merits. Rymarz argues that substitute counsel's misunderstanding about whether Rymarz was incarcerated or released on bond, and counsel's resulting failure to inform him of the correct time for a pretrial motions hearing on February 21, 2007, proves that counsel was just pushing for guilty pleas and was not investigating the case for trial. Rymarz admits that the capias was immediately withdrawn. Moreover, as counsel was prepared to try the case before a jury less than three months later, when Rymarz entered his guilty pleas, petitioner has shown no deficient performance or prejudice under Hill. 474 U.S. at 58-59. Thus, the state court's disposition of the claim was not contrary to, or an unreasonable application of established federal law, or based on an unreasonable determination of facts, and the motion to dismiss must be granted, pursuant to § 2254(d).

> **Claim H:** **(1) Petitioner's guilty pleas to the charges in Case No. 732 were unlawfully induced and involuntary because he did not have an understanding as to the nature of the crime and the direct consequences of the pleas, as neither counsel nor the court informed him of the maximum penalties for the first set of charges. (2) The court erroneously advised petitioner regarding his sentence exposure as to the charges in Case No. 1061, stating that he faced twenty years and twelve months of incarceration, when, in fact, he faced thirty years and twelve months.**

This claim is unsupported by the record. In open court, Rymarz signed acknowledgment forms as to each set of charges, on August 15 and December 6, 2006, respectively, indicating that he was aware of "the range of possible punishment for each charge. (See Record No. 090196, M. Dism. Exh. 5 and 6.) He stated during the guilty plea hearing that he had read the indictments in Case No. 732, each of which stated the maximum penalty for the offense charged. (Tr. 6, May 2, 2007.) As to both Case No. 732 and Case No. 1061, Rymarz stated to the Court that he had discussed with counsel, and understood, the elements of the charges and that his guilty pleas waived specific trial and appeal rights. (Id. 7-11; Tr. 6–7, 11-14, May 29, 2007.) During the plea

- 18 -

colloquy in Case No. 1061, the Court asked Rymarz, "Has your lawyer advised you of the maximum punishment for each of these crimes?" and Rymarz answered, "Yes, sir." (Tr. 12, May 29, 2007.)

The state habeas court dismissed part (1) of this claim under Anderson, 281 S.E.2d at 888, because Rymarz represented during the plea hearing that he was aware of the penalties and provided no evidence that his pleas were invalid. Likewise, under federal law, Rymarz's in-court statements are conclusive evidence that he knew the maximum penalties and understood the elements of the charge and the consequences of the pleas. Lemaster, 403 F.3d at 221-22. Moreover, as he is bound by his in-court statement that he read the indictments in Case No. 732, Rymarz cannot show any reasonable probability that but for counsel's alleged failure to advise him of the statutory maximums, he would have insisted on proceeding to trial. Thus, he fails to show prejudice under Hill, 474 U.S. at 58-59, and his allegation of ineffective assistance fails. Because the state court's disposition of Claim H(1) was thus not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of facts, the motion to dismiss must be granted as to this claim, pursuant to § 2254(d).

The state court dismissed part (2) of Claim H as procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) because Rymarz did not object to this issue during trial and/or direct appeal. Under the doctrine of procedural default, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule, absent petitioner's showing of cause and actual prejudice or actual innocence. See Murray v. Carrier, 477 U.S. 478, 485, 495-96 (1986). The Fourth Circuit has consistently held that the rule in Slayton constitutes an independent and adequate state procedural rule that bars federal habeas relief. See, e.g., Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).

Rymarz argues that ineffective assistance of counsel should serve as cause to excuse his procedural defaults. Because the court herein finds that Rymarz has not established any respect

in which counsel provided constitutionally deficient representation as Rymarz alleges, however, his claims of ineffective assistance cannot serve as cause to excuse default.[10]  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  As he fails to demonstrate cause and prejudice, or actual innocence, so as to circumvent his default, the court is barred from review of this claim on the merits.  Murray, 477 U.S. at 485, 495-96.

> **Claim I:**  **The trial court abused its discretion in denying counsel's motion to withdraw.**

The state habeas court dismissed this claim as procedurally defaulted under Slayton, 205 S.E.2d at 682, because Rymarz did not object to this issue during trial and/or direct appeal.  As Rymarz fails to show cause and prejudice or actual innocence to excuse this default, his federal habeas claim is barred from review on the merits.  Murray, 477 U.S. at 485, 495-96.

> **Claim J:**  **Trial counsel was ineffective by not being honest with the court about his advising petitioner that he could withdraw his guilty pleas at any time.**

> **Claim K:.**  **Trial counsel was ineffective for telling petitioner that he could withdraw his guilty pleas at any time, which clearly was untrue.**

---

[10]  Rymarz has not expressly raised Claim H(2) concerning Case No. 1061 as an ineffective assistance claim, here or in state court.  Although the record indicates some inaccuracies in the information the court and prosecutor provided regarding the maximum sentences Rymarz faced in this case, however, it is clear that this misinformation did not result in any prejudice of constitutional dimensions.

The respondent admits that indictment CR060001061-01 incorrectly stated the maximum penalty for credit card forgery as twenty years; in fact, this offense is a Class 5 felony for which the maximum penalty is ten years.  Rymarz also complains that the trial judge cited incorrect maximum penalties for Case No. 1061, when the court said:  Do you understand that, with regard to credit card theft and credit card forgery, the maximum punishment is twenty years."  (Tr. 12, May 29, 2007.)  In fact, one of these charges carries a maximum sentence of only ten years, for a total maximum sentence of thirty years on the two charges.

Rymarz offers no conclusive evidence, however, that he was not notified of the accurate penalties for each of the offenses in Case No. 1061 from discussions with counsel, in keeping with his in-court statements.  (Tr. 12, May 29, 2007.)  Most importantly, Rymarz also fails to demonstrate that being advised inaccurately of potential penalties he actually faced on these three charges had any effect whatsoever on his decision to plead guilty or on the overall outcome in his case.  In fact, Rymarz was sentenced to far less than the statutory maximum on each of these charges.  Accordingly, these errors could not entitle him to federal habeas relief.  See Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) in guilty plea case for proposition that federal habeas court cannot grant relief under § 2254 absent finding that an established constitutional error "had a substantial and injurious effect or influence in determining" the outcome).

The Supreme Court of Virginia dismissed Claims J and K under both prongs of Strickland, based on two findings of fact: (1) the trial court's rejection of Rymarz's testimony that someone had told him he could withdraw his pleas at any time, and (2) trial counsel's affidavit stating that he had told Rymarz that withdrawing the guilty pleas would be very difficult.[11] The record supports the state courts' findings of fact. At the July 12, 2007 hearing on Rymarz's motion to withdraw his guilty pleas, the trial court heard Rymarz's repeated testimony that someone had told him he could withdraw his guilty pleas at any time and that he entered the pleas on May 2, 2007 in order to give himself more time to build a case to take to the jury. (Tr. 8, 15, 18, May 2, 2007.) The Court also reviewed Rymarz's statements during the plea hearing. In the end, the trial judge found no evidence demonstrating that Rymarz was

> operating under a mistake of fact or that he was induced. The colloquy and the inquiry that Judge Farmer made on May 2nd goes as far as to have discussions about the fact that the jury trial was waiting to go forward, what are we doing, is it your intention. And the questions that were asked and the answers that were given don't demonstrate a lack of understanding. If anything, there's at least one break in that hearing where the Court suggested or directed counsel to take time to go over things again or discuss things again with Mr. Rymarz.

(Tr. 34, July 12, 2007.)

As Rymarz has not shown clear and convincing evidence to the contrary, the court must presume this factual finding correct, including the implicit finding that Rymarz did not prove his claim of being told he could withdraw his guilty pleas at any time. § 2254(e)(1). Based on this finding, Rymarz cannot show that counsel's performance was deficient or prejudical as alleged. Thus, the state court's disposition of these claims is not contrary to, or an unreasonable application of, Hill, 474 U.S. at 58-59, or based on an unreasonable determination of facts, and the motion to dismiss must be granted, pursuant to § 2254(d).

---

[11]   Counsel denied telling Rymarz that he could withdraw his guilty plea later and go to trial; he stated that after Rymarz expressed a desire to withdraw his guilty pleas, counsel told him withdrawal would be very difficult. (Record No. 090196, M. Dism. Ex. 9.)

<div style="margin-left: 2em;">

**Claim L:**     **The poor acoustics in the courtroom violated petitioner's due process rights, because he could not hear what was going on and advised the court of this fact. Petitioner was prejudiced by his inability to hear the proceedings.**

</div>

The state habeas court dismissed this claim as procedurally defaulted under Slayton, 205 S.E.2d at 682, because Rymarz did not object to this issue during trial and/or direct appeal. As Rymarz fails to show cause and prejudice or actual innocence to excuse this default, his federal habeas claim is barred from review on the merits. Murray, 477 U.S. at 485, 495-96. The motion to dismiss will be granted as to this claim accordingly.

<div style="margin-left: 2em;">

**Claim M:**     **Trial counsel violated petitioner's right to be present at the hearing held February 21, 2007. Based on a mistaken belief that petitioner was incarcerated, counsel advised petitioner that the hearing began at 10:00 a.m., although the case actually began at 9:00 am., and discussion occurred before petitioner was present to participate.**

</div>

The state habeas court dismissed this claim under Anderson, 281 S.E.2d at 888, because Rymarz represented during the plea hearing that he was satisfied with counsel's performance and that his pleas were valid, and he provided no evidence that his pleas were invalid. Because the claim has no bearing on the validity of Rymarz's guilty pleas, which were entered several months later, and directly contradicts his sworn statements at the plea hearing, it was properly dismissed under federal law.[12] Hill, 474 U.S. at 53-59; Lemaster, 403 F.3d at 221-22. Therefore, the motion to dismiss will be granted as to Claim M, pursuant to § 2254(d).

<div style="margin-left: 2em;">

**Claim N:**     **The evidence was insufficient to prove that petitioner stole the credit card used in the offense conduct charged in Case No. 732. He asserts that he had permission to use the credit card except for his use of the card to obtain a tattoo. Petitioner should only have been convicted of unauthorized use of the credit card.**

</div>

The state habeas court dismissed this claim under Peyton, 169 S.E.2d at 571, as waived by Rymarz's voluntary and intelligent guilty pleas. Because the alleged defects mentioned in this

---

[12] The transcript of the February 21, 2007 hearing reflects that before Rymarz's arrival, counsel merely advised the court of an intended motion to continue the two cases. (Tr. 2-3, Feb. 21, 2007.)

claim preceded Rymarz's valid guilty pleas, the claim is also waived under federal law.[13] Tollett,

411 U.S. at 267. Moreover, the record indicates substantial prosecutorial evidence to support the

guilty pleas. Accordingly, the state court's disposition is not contrary to, or an unreasonable

application of, established federal law, or based on an unreasonable determination of facts, and

the motion to dismiss must be granted as to Claim N, pursuant to § 2254(d).

> **Claim O:**     **The Commonwealth was less than truthful when the prosecutor argued at sentencing that petitioner had been convicted of three counts of violating probation, six counts of possession of marijuana, and two counts of possession of a controlled substance, when in fact, petitioner had only been convicted of one probation violation and one charge of possession of marijuana, and the other charges were nolle prosequi.**

The state court dismissed this claim as procedurally defaulted under Slayton, 205 S.E.2d

at 682, as Rymarz did not pursue this issue at trial or on direct appeal. As Rymarz fails to show

cause and prejudice or actual innocence to excuse this default, this court cannot reach the merits

of the claim. Murray, 477 U.S. at 485, 495-96. The motion to dismiss will be granted as to

Claim O.

> **Claim P:**     **Trial counsel was ineffective for failing to object to the prosecutor's inaccurate statements about petitioner's prior convictions.**

The Supreme Court of Virginia found that this claim failed under both prongs of

Strickland, stating:

> The record, including the trial transcript, demonstrates that petitioner did not point out the error to his trial counsel or the court when given the opportunity to speak at his sentencing hearing. When petitioner did inform his appellate counsel of the error, and after petitioner withdrew his appeal, counsel filed a motion for reconsideration and brought the error to the attention of the trial court. The trial court considered the motion and chose not to modify petitioner's sentence.

---

[13] In this claim, Rymarz is either confused about which criminal case charged him with use of his ex-girlfriend's step-father's credit card to purchase a tattoo (Case No. 1061, and not Case No. 732 as he alleges), or he is trying to use the evidence from the tattoo case to argue that he had permission to use his friend's father's card, as charged in Case No. 732. Whatever his intention, the claim is waived by his valid guilty pleas.

Facts in the record support the state court's finding. The prosecutor's misstatements occurred during argument. (Tr. 4, July 26, 2007.) Rymarz said nothing about his prior convictions during allocution. (Id. 12-13.) Furthermore, in his motion to reconsider, Rymarz pointed out the prosecutor's errors to the trial court, and the Court nevertheless denied the motion, noting expressly that Rymarz's sentence was not based on comments by the prosecutor, but was based on his record.[14] Accordingly, Rymarz cannot demonstrate any reasonable likelihood that but for counsel's failure to object to the inaccurate representation of his prior convictions during trial proceedings, the sentencing outcome would have been different. As he thus fails to demonstrate prejudice under Strickland, 466 U.S. at 694-95, the state court's disposition of Claim P is not contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of facts, and the motion to dismiss must be granted, pursuant to § 2254(d), as to this claim.

> **Claim Q:** **The Commonwealth's Attorney violated petitioner's due process rights when he questioned the sentencing guidelines by saying they were unjust.**

The Supreme Court of Virginia dismissed this claim as procedurally defaulted under Slayton, 205 S.E.2d at 682, because Rymarz did not pursue this issue at trial or on direct appeal. As Rymarz fails to show cause and prejudice or actual innocence to excuse this default, this court cannot reach the merits of the claim. Murray, 477 U.S. at 485, 495-96. The motion to dismiss will be granted as to Claim Q.

> **Claim R:** **Trial counsel was ineffective for failing to object to the due process violation that occurred when the prosecutor called the sentencing guidelines unjust.**

The state habeas court held that this claim failed to satisfy either prong of the Strickland test:

---

[14] The Court's reasons for denial of the motion to reconsider appear in a handwritten addendum at the bottom of defense counsel's letter regarding the motion to reconsider, dated May 15, 2008.

> The sentencing guidelines are not binding on the courts, and it was not improper for the Commonwealth to argue in favor of a sentence above the guidelines, just as petitioner's counsel argued in favor of a lower sentence.

Rymarz fails to demonstrate that this disposition is contrary to, or an unreasonable application of Strickland, or that it is based on an unreasonable determination of facts. Accordingly, the motion to dismiss must be granted as to Claim R, pursuant to § 2254(d).

**Claim S: The trial court abused its discretion by agreeing with the prosecutor's assessment that the sentencing guidelines were too low. The court further based its finding on evidence not in the record regarding what other judges had done in petitioner's prior cases and why.**

The state court dismissed this claim as procedurally defaulted under Slayton, 205 S.E.2d at 682, because Rymarz did not pursue this issue at trial or on direct appeal. As Rymarz fails to show cause and prejudice or actual innocence to excuse this default, the court is unable to review the claim on the merits. Murray, 477 U.S. at 485, 495-96. The motion to dismiss will be granted as to Claim S.

**Claim T: Trial counsel was ineffective for failing to object when the trial court relied on facts not in the record.**

The Supreme Court of Virginia dismissed Claim T upon finding that it satisfied neither prong of the Strickland test, noting that Rymarz failed to demonstrate consideration of improper evidence and that the trial judge "merely commented that prior judges had not helped petitioner by being lenient." The record supports this finding, and Rymarz fails to show that counsel's failure to object was either deficient performance or prejudical to the outcome. Thus, the state court's disposition was not contrary to, or an unreasonable application of Strickland, or based on an unreasonable determination of facts, and the motion to dismiss must be granted as to Claim T, pursuant to § 2254(d).

**Claim U: The trial court abused its discretion in sentencing petitioner above the sentencing guidelines.**

The state habeas court rejected this claim based on Virginia Code Ann. § 19.2-298.01(F), which provides that a court's failure to follow Virginia's sentencing guidelines is not reviewable

on appeal or in other post-conviction proceedings. A federal <u>habeas</u> court, however, may grant relief under § 2254 only where petitioner demonstrates that his confinement violates the Constitution, laws, or treaties of the United States. As this claim rests solely on interpretation of Virginia's sentencing guidelines, it is not cognizable on federal <u>habeas</u> review. <u>Wright v. Angelone</u>, 151 F.3d 151, 157 (4th Cir. 1998) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). The motion to dismiss will be granted as to Claim U.

### III. Conclusion

For the stated reasons, the court concludes that Rymarz has failed to present any claim on which he is entitled to <u>habeas</u> relief under § 2254. Accordingly, the respondent's motion to dismiss will be granted. An appropriate order will issue this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 14th day of January, 2010.

_____
United States District Judge